# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, a Michigan corporation, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 15 CV 11029 |
| v. | ) Hon. Charles R. Norgle |
| HODSCO CONSTRUCTION, INC., et al., | ) |
| Defendants. | ) |
| HODSCO CONTSTRUCTION, INC., | ) |
| Counter-Plaintiff, | ) |
| v. | ) |
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | ) |
| Counter-Defendant. | |

## OPINION AND ORDER

CHARLES R. NORGLE, United States District Court Judge

Several years after a residential development was built in Glenview, Illinois, residents discovered water leaking into their homes. As a result, the condominium association, Defendant Tower Crossing Condominium Association (the "Association") sued several contractors in state court, including Defendant Hodsco Construction, Inc. ("Hodsco") (Hodsco and the Association are collectively, "Defendants"). When Hodsco sought to have its insurer, Plaintiff Frankenmuth Mutual Insurance Company ("Frankenmuth") provide its defense, Frankenmuth filed this action, and seeks a declaratory judgment that it does not owe Hodsco a duty to defend.

Frankenmuth is a Michigan Corporation with its principal place of business in that State. The Association and Hodsco are both Illinois corporations, and both have their principal places

of business in Illinois. There is more than $75,000 in controversy in the underlying litigation; accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Before the Court are Frankenmuth's and Hodsco's cross-motions for judgment on the pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Frankenmuth's motion is denied and Hodsco's motion is granted; the Court finds that Frankenmuth does owe Hodsco a duty to defend.

## I. BACKGROUND

### A. The Underlying State Court Litigation

Kimball Hill, Inc. ("Kimball Hill") was a residential real estate developer. At some point in 2002, Kimball Hill started development of a 154-unit town home complex called Tower Crossing, which was located in Glenview, Illinois, at the site of the former Glenview Naval Air Station. The Association was subsequently formed to govern the common elements of Tower Crossing and its residents.

To build Tower Crossing, Kimball Hill subcontracted with several firms, including Hodsco. Specifically, Kimball Hill hired Hodsco to build masonry- and concrete-block demising walls for the individual units. Kimball Hill, Hodsco, and the other subcontractors hired by Kimball Hill constructed the Tower Crossing units throughout 2002 and 2003.

In November 2005, Tower Crossing's homeowners assumed control of the Association, via a board of directors. Some time after control of the Association was ceded to the homeowners, the Association discovered numerous defects in Tower Crossing's construction. This discovery culminated in the Association filing suit against several subcontractors, including Hodsco. See Tower Crossing Condominium Assoc., et al. v. Prate Sheet Metal, Inc., et al., 15 L 9475 (Cir. Ct. Cook Cnty. Sept. 16, 2015) [hereinafter the "State Court Litigation"], Ex. A to

Compl. Declaratory J. As the allegations pertain to Hodsco, the Association alleges that, due to Hodsco's misfeasance:

> "[P]arapet balconies lack and/or were constructed with improperly installed flashing and coping; roof saddle roofing membranes were improperly integrated with chimneys and parapet walls; there was or may have been excessive clogging of the drainage cavity (air space) with mortar between the exterior brick wythe and wood frame structure; masonry chimneys contained defective flashing and/or are not flashed; punched windows were defectively flashed and/or installed; coping was defectively flashed; the rear patio parapet to wall intersections were defectively flashed; concrete chimney caps were defectively flashed or were not flashed; concrete chimney caps were defectively sloped; [and] through-wall masonry flashing at floor line shelf angles was defective."

Compl. Declaratory J. ¶ 18 (quoting State Court Litigation, Third Am. Compl. ¶¶ 29, 31) (internal formatting structures omitted). The Association alleges further that as a result of the above construction defects:

> "[S]ome or all of the Defects caused sudden and calamitous water infiltration and/or mold growth within the interior spaces of [the] Homes, which has damaged [the] Homes (including elements of the Homes separate and apart from the defective elements), interior finishes within [the] Homes and personal property of Homeowners located within [the] Homes (collectively "Property Damage"). In some instances, during periods of rain, rapidly infiltrating water cascaded into interior portions of [the] Homes and fell from ceilings and/or other surfaces creating the equivalent of a waterfall within the Home."

Compl. Declaratory J. ¶ 19 (quoting State Court Litigation, Third Am. Compl. ¶ 32). The complaint in the State Court Litigation does not allege that Hodsco's construction defects caused bodily injury to any individuals. At some point, Hodsco gave Frankenmuth notice of the claim filed against it (i.e. the State Court Litigation), and asked Frankenmuth to honor its contractual duty to defend Hodsco in that action.

**B. The Contract Between Frankenmuth and Hodsco**

From December 31, 2000 until December 31, 2003 (the "Policy Period"), Hodsco was insured by Frankenmuth for indemnification against, *inter alia*, general commercial liability, pursuant to a written insurance policy [hereinafter the "Agreement"]. See Ex. B to Frankenmuth

3

Mut. Ins. Co.'s Mem. Supp. Mot. J. Pleadings 13 [hereinafter "Frankenmuth's Mot."]. The Agreement was originally for one year, and was renewed twice, using language that was virtually identical to the original agreement. Several terms and conditions of the Agreement are relevant to the issues in this case.

The Agreement specified that Frankenmuth would defend and if necessary, indemnify, Hodsco against any claims of "bodily injury" or "property damage" for which Hodsco is alleged to be liable. See Agreement § I, Coverage A.1.a. This broad grant of indemnity is circumscribed by temporal limitations, outright substantive exclusions from coverage, and technical definitions.

First, the Agreement only requires Frankenmuth to defend and indemnify Hodsco if the claim arises within the Policy Period. Specifically, the claimed bodily injury or property damage must be "caused by an 'occurrence' that takes place in the 'coverage territory' . . . during the [P]olicy [P]eriod." Id. § I, Coverage A.1.b.

Second, the Agreement excludes many categories of damage from coverage. There are two policy exclusions that are relevant to this case. First is the "contractual liability" exclusion, which excludes from coverage "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Id. § I, Coverage A.2.b. The contractual liability exclusion, itself, has exclusions, the relevant one of which excludes from the exclusion (i.e. brings back within the scope of coverage) liability that Hodsco would have incurred "in the absence of the contract or agreement." See id. § I, Coverage A.2.b.(1).

The second exclusion relates to "Damage to Property." Id. § I, Coverage A.2.j. Specifically, the Agreement does not insure property damage, *inter alia*, to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Id. §§ I, Coverage A.2.j.(5), (6). Similar to the contractual liability exclusion, the damage-to-property exclusion has its own exceptions. Relevant to this case, "'property damage' included in the 'products/completed operations hazard'" does fall within the scope of coverage. See id. § 1, Coverage A.2.j.

"Property damage," "occurrence," "your work," and "products/completed operations hazard" are all defined terms within the Agreement. "Property damage" means:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id. § V.17. "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. § V.13. "'Your work' means: [(a)] work or operations performed by you or on your behalf; and [(b)] materials, parts or equipment furnished in connection with such work or operations." Id. § V.21. The "[p]roducts/completed operations hazard" includes "all 'bodily injury' and 'property damage' occurring away from the premises you [the insured] own or rent and arising out of 'your product' or 'your work. . . . Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.'" Id. § V.16.

## C. Procedural History

On April 23, 2008, Kimball Hill filed a Chapter 11 bankruptcy petition. Pursuant to the resulting reorganization plan, a new trust was formed called the KHI Liquidation Trust (the

5

"Trust"); Kimball Hill's assets—including contingent claims—were transferred to the Trust. On November 10, 2009, the Association filed suit against Hodsco in the State Court Litigation. The Association and the Trust engaged in litigation, which concluded with the Trust assigning to the Association its right to sue Hodsco and the other subcontractors. On September 16, 2015, the Association filed the State Court Litigation. Shortly thereafter, Hodsco tendered its defense in that case to Frankenmuth. On December 8, 2015, Frankenmuth filed this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and seeks to obtain a judicial determination regarding its rights and obligations under the Agreement that pertain to its duty to defend, and, if necessary, to indemnify Hodsco in the State Court Litigation. Although the Association is nominally a defendant in this matter, Frankenmuth represents that it is not seeking any relief against the Association, and has joined them only to the extent that the Association wishes to protect any of its interests that may arise here.

Hodsco filed its Answer and Counterclaim on February 5, 2016, seeking a determination that Frankenmuth is under a duty to defend Hodsco. On February 26, 2016, Frankenmuth filed its Answer to Hodsco's counterclaim; at the same time, it filed its motion for judgment on the pleadings, pursuant to Rule 12(c). In its Response to Frankenmuth's motion, Hodsco also moved for judgment on the pleadings, which the Association joined. The motions are fully briefed and are ripe for ruling.

## II. DISCUSSION

### A. Standard of Decision

A motion brought under Rule 12(c) "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Lodholtz v. York Risk Servs. Grp., Inc., 778 F.3d 635, 639 (7th Cir. 2015) (citing Adams v. City of Indianapolis, 742 F.3d 720, 727 (7th

Cir. 2014)). In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (internal quotation marks and citation omitted); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (stating that a complaint must allege "enough facts to state a claim to relief that is plausible on its face"). The Court accepts as true all well-pleaded factual allegations in the pleadings, and ignores any allegations that are mere legal conclusions. See Adams, 742 F.3d at 728 (citing McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 885 (7th Cir. 2012)).

**B. The Merits: Whether Frankenmuth has a Duty to Defend Hodsco**

Where subject matter jurisdiction is premised upon diversity of citizenship, the Court applies the substantive law of the state in which it sits—Illinois—when, as here, the parties do not argue that another state's law applies. See Thorton v. M7 Aerospace LP, 796 F.3d 757, 770 n.6 (7th Cir. 2015). "The duty to defend is broader than the duty to indemnify." Alton Transp., Inc. v. Westchester Fire Ins. Co., Nos. 15-2279, 15-2363, 2016 WL 2956834, *4 (7th Cir. May 20, 2016) (citing Country Mut. Ins. Co. v. Olsak, 908 N.E.2d 1091, 1098 (Ill. App. Ct. 2009)). But an insurer's duty to defend is not unlimited: "'[i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises.'" Amerisure Mut. Ins. Co. v. Microplastics, Inc., 622 F.3d 806, 810 (7th Cir. 2010) (quoting Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co., 611 F.3d 339, 346 (7th Cir. 2010). Moreover, the contractual terms in the Agreement and the allegations in the State Court Litigation are construed in favor of Hodsco. See id. at 811.

7

In Illinois, the construction of a contract is a question of law. Rickher v. Home Depot, Inc., 535 F.3d 661, 664 (7th Cir. 2008). And under Illinois law, if the contractual language is unambiguous, the Court must construct the contract according to the words' plain and ordinary meaning. AMCO Ins. Co. v. Erie Ins. Exch., 2016 IL App (1st) 142660 ¶ 20 (citing Outboard Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1212 (Ill. 1992)).

In this case, Frankenmuth states three main reasons why it does not have a duty to defend Hodsco. First, Frankenmuth argues that the damages alleged by the Association in the State Court Litigation fall outside the scope of covered losses within the Agreement. Second, Frankenmuth avers that the Agreement's policy exclusions affirmatively bar coverage. Third, even if Frankenmuth does have a duty to defend Hodsco, the Association does not have standing to sue Hodsco on behalf of Tower Crossing's homeowners. The Court will address each argument in turn.

1. *Whether the events described in the State Court Litigation fall within the scope of Frankenmuth's duty to defend.*

Frankenmuth asserts two reasons why the contractual terms in the Agreement do not contemplate the events in the State Court Litigation. First, Frankenmuth claims that it has no duty to defend because the complaint in the State Court Litigation does not allege an "occurrence" of "property damage" as those terms are used in the Agreement. Second, even if there was an occurrence of property damage that was properly alleged in the complaint, there is still no duty to defend because the occurrence of damage occurred outside of the Policy Period.

a. *Whether the underlying complaint alleges an occurrence of property damage, as those terms are used in the Agreement.*

Frankenmuth avers that the complaint in the State Court Litigation does not allege an "occurrence" of "property damage" as those terms are defined in the Agreement. "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use

of that property." Agreement § V.17.a. Frankenmuth develops how the damage alleged in the State Court Litigation falls outside the scope of "property damage" by arguing that the contractual definition—combined with a potential policy exclusion— categorically excludes the damage alleged in this case from the scope of the broader definition of property damage used in the Agreement. Because this argument involves a policy exclusion, the Court will discuss this argument in Section II.B.2.b, *infra*.

Regarding the word "occurrence," Frankenmuth argues that there is no "occurrence" alleged because the damage occurred as a result of Hodsco's alleged negligent roof construction, not some external event. The Agreement defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Agreement § V.13. The parties appear to dispute the meaning of the word "accident," although neither claims that the term is ambiguous.

Black's Law Dictionary defines an "accident" as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated; any unwanted or harmful event occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame." (10th ed. 2014). Similarly, "accident" is defined in Merriam-Webster's Collegiate Dictionary as "an unforeseen and unplanned event or circumstance," or "an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but for which legal relief may be sought." (11th ed. 2003). If the Court gives the contractual language its plain and ordinary meaning, as it must, then the import from these definitions is that an event is an "accident" if the actor causing the event did not intend to cause the event or could not otherwise foresee that the event would occur.

9

Here, the complaint in the State Court Litigation alleges that the water damage inflicted upon the residents of Tower Crossing was caused, at least in part, by Hodsco's failure to install various portions of the roof system in a manner that would keep water from entering the structure. The complaint does not suggest that Hodsco intended to cause water damage.

Frankenmuth argues instead that the damage does not constitute an occurrence because the scope of the damage is confined to Hodsco's alleged faulty workmanship, and that Hodsco should have foreseen that its faulty construction would cause the damage. In other words, Frankenmuth argues that a loss can only be an "accident" if it is caused by some third party—not Hodsco, its insured.

"'Foreseeability means that which is *objectively reasonable* to expect, not merely what might conceivably occur.'" Negron v. City of Chicago, 2016 IL App (1st) 143432 ¶ 16 (May 25, 2016) (quoting Nat'l Bank & Tr. Co. of Chi. v. Nat'l Advertising Co., 149 Ill.2d 14, 29 (1992)); see also Skolnik v. Allied Prop. & Cas. Ins. Co., 45 N.E.3d 1161, 1170 (Ill. App. Ct. 2015) (quoting McKenna v. AlliedBarton Sec. Servs., LLC, 35 N.E.3d 1007, 1020 (Ill. App. Ct. 2015)) ("'Legal cause is essentially a question of foreseeability, where one determines whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.'").

Frankenmuth's position is correct only to the extent that the damage was confined to Hodsco's construction: a party cannot—by accident—negligently construct a product. For example, a party should reasonably foresee that a product they built (e.g. a roof) would be considered "damaged" if it was not built correctly. See Pekin Ins. Co. v. Richard Marker Assocs., Inc., 682 N.E.2d 362, 365 (Ill. App. Ct. 1997) (citing Monticello Ins. Co. v. Wil-Freds Const., Inc., 661 N.E.2d 451, 456 (Ill. App. Ct. 1996)) ("[A] defective structure is the natural and ordinary consequence of faulty workmanship."). Similarly, a contractor tasked with constructing

10

a whole house would reasonably foresee that the house would be damaged if the contractor used defective workmanship when building the house. See Donven Homes, Inc. v. Amerisure Ins. Co., 2012 IL App (1st) 102790 ¶ 33 (Mar. 30, 2012) (holding that the insurer had no duty to defend a general contractor hired to build a house where the underlying complaint only alleged damage to the contracted-for house). But a party cannot reasonably expect how their defective construction will affect matters outside of the party's control. Damage to "other property"—that is, property that was not the party's "work"—is not a foreseeable consequence of the defective construction. See, e.g., Richard Marker, 682 N.E.2d at 366 (holding insurer had a duty to defend where insured's plumbing-installation work caused water infiltration that damaged third-party's personal property); Ohio Cas. Ins. Co. v. Bazzi Const. Co., Inc., 815 F.2d 1146, 1148-49 (7th Cir. 1987) (applying Illinois law and drawing distinction between "damage solely to the product or work of the insured" and "damage to property other than [the insured's] own work or product.").

Thus, the law in Illinois illustrates that a party can only foresee events that are tied directly to the party's performance. At this stage, however, the Court need not determine whether the damages were in fact caused by an "accident," which would bring the event within the definition of an "occurrence." The Court only needs to determine whether the alleged facts in the underlying complaint potentially fall within the Agreement's coverage. See Microplastics, Inc., 622 F.3d at 810.

Here, the complaint in the State Court Litigation does not suggest that Hodsco expected that its defective construction would cause the level of property damage that is at issue in the State Court Litigation. The complaint in the State Court Litigation alleges only that Hodsco's faulty masonry work caused near-catastrophic water damage inside Tower Crossing's residences.

This type of injury is the paradigmatic claim associated with commercial general liability. See Richard Marker, 682 N.E.2d at 366 ("A CGL Policy 'does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.'") (quoting W. Cas. & Sur. Co. v. Brochu, 475 N.E.2d 872, 878 (Ill. 1985)). Construing all contractual terms and allegations in favor of Hodsco, the Court finds that these allegations are potentially sufficient to fall within the Agreement's coverage. Accordingly, the Court finds that the complaint in the State Court Litigation alleges that Hodsco's actions caused an "occurrence" within the meaning of the Agreement.

      b. *Whether the underlying complaint alleges that the occurrence happened during the relevant Policy Period.*

Next, Frankenmuth argues that, even if the complaint in the State Court Litigation alleges an "occurrence" of "property damage," any damage occurred after December 31, 2003, when the Policy Period ended. Aside from the first requirement—that the insured cause an occurrence of property damage—the Agreement also requires that the "'property damage' occurs during the policy period." See Agreement § I, Coverage A.1.b(2). Under the Agreement, damage to property is deemed to occur at the moment when the property first experienced the injury, see id. § V.17.a, and "includ[es] continuous or repeated exposure to substantially the same general harmful conditions." Id. § V.13.

Frankenmuth argues that this temporal-limitation clause absolves it of its duty to defend Hodsco because the Association did not discover the water damage until 2005. Specifically, Frankenmuth points to the underlying complaint's language that the water flows were "sudden and calamitous" to support their contention that any damage could not have occurred prior to 2005; if the water discharge was indeed sudden and calamitous, it could not have been the product of an injury that allegedly occurred before December 31, 2003. Frankenmuth contends

that the damage would have been so disastrous that it could not have continued unnoticed for two years.

Frankenmuth's argument is sound as it relates to the sudden, unwanted water accumulation within the homes at Tower Crossing. But the underlying complaint's allegations of injury do not stop with leaking water. Rather, the complaint alleges in relevant part that "some or all of the Defects caused sudden and calamitous water infiltration and/or mold growth within the interior spaces of Homes, . . . ." See State Court Litigation, Third Am. Compl. ¶ 32. The parties dispute how the Court should construct this sentence of the underlying complaint. Frankenmuth's position is that the sentence should be parsed to read that the mold growth was sudden and calamitous, and started at the same time as the water accumulation within the homes. Defendants, on the other hand, argue that the damage in the complaint should be parsed into two stages. The first—the mold growth—occurred shortly after Hodsco finished its work on the homes. The second—the sudden and calamitous water infiltration—occurred after several years of water accumulation that eventually transformed into a deluge.

Here, construing the terms and allegations in favor of Hodsco, the Court finds that the complaint in the State Court Litigation alleges that the mold damage potentially occurred shortly after Hodsco finished its work at Tower Crossing. To be sure, the complaint does not discuss when the mold started to grow, or when Hodsco finished its work. But Hodsco only has to show that the facts in the complaint fall "potentially within[] the policy's coverage" to trigger Frankenmuth's duty to defend. See Microplastics, Inc., 622 F.3d at 810. They have: the complaint alleges that the Tower Crossing homes were constructed in 2002 and 2003, that the Policy Period ran until December 31, 2003, and that Hodsco's work was deficiently discharged in a manner that allowed water to fall inside the homes, plausibly from 2003 until its discovery in

13

2005. The complaint also states that the defects caused mold growth within the interior spaces of the homes. The Court finds that these allegations are sufficient to require Frankenmuth to defend Hodsco in the State Court Litigation, unless a policy exclusion applies.

*2. Whether an exclusion within the Agreement affirmatively bars coverage.*

In the alternative, Frankenmuth argues that even if the complaint does state an occurrence of property damage within the Policy Period as those terms are used in the Agreement, two policy exclusions apply to deactivate its duty to defend Hodsco. Specifically, Frankenmuth cites to the "Contractual Liability" and "Damage to Property" exclusions as the terms that serve to deny coverage to Hodsco.

> *a. Whether the Contractual Liability exclusion extinguishes Frankenmuth's duty to defend Hodsco.*

Frankenmuth first points to the "Contractual Liability" clause. This clause contains both a large categorical exclusion, coupled with an exception to the exclusion that nearly swallows the rule. Specifically, the exclusion states that Frankenmuth will not cover damage to property that Hodsco is required to pay "by reason of the assumption of liability in a contract or agreement." See Agreement § I, Coverage A.2.b. But that exclusion contains an exception: Frankenmuth is required to cover property damage for which Hodsco is liable, if Hodsco would be liable "in the absence of the contract or agreement." See id. § I, Coverage A.2.b(1).

Frankenmuth avers that "[a]s admitted by Hodsco in its Answer, The Underlying Lawsuit asserts that Hodsco breached an implied warranty to the Association. Illinois law holds that claims for implied warranty of habitability are contractual in nature." Frankenmuth's Mot. 13. Frankenmuth goes on to argue that because Hodsco allegedly breached the implied warranty of habitability—a contractual term as a matter of law—Frankenmuth has no duty to defend Hodsco

14

because Hodsco assumed liability (the warrant of habitability) in the contract it had with Kimball Hill.

Putting aside for the moment the noticeable absence of contractual privity between Hodsco and the Association, the problem with Frankenmuth's argument is that it does not consider the exception to the Contractual Liability clause. While this clause does exclude coverage associated with contractual damages, the Agreement also carves out a large exception and obliges Frankenmuth to defend Hodsco if Hodsco would be liable for the damage, even if there was not a contract. In this case, the complaint in the State Court Litigation alleges that Hodsco negligently constructed various systems in the Tower Crossing residents, which caused the damage associated with the mold and water infiltration. Frankenmuth's position is thus inconsistent with this exception to the policy exclusion as applied to the complaint, and the Court finds that this coverage exclusion does not relieve Frankenmuth of its obligation to defend Hodsco.

  b. *Whether the Damage to Property exclusion releases Frankenmuth from its duty to defend Hodsco.*

The second policy exclusion that Frankenmuth argues applies to this case is the "Damage to Property" exclusion. That exclusion states that Frankenmuth is not required to cover damage to certain categories of property. As relevant here, the Damage to Property Exclusion excludes from coverage damage to property on which Hodsco or its contractors or subcontractors were working, if the damage arose from that work. See Agreement § I, Coverage A.2.j(5). The Damage to Property Exclusion also excludes from coverage damage arising from the costs of "restor[ing], repair[ing]. or replac[ing]" any part of the property because Hodsco or its contractors or subcontractors performed their work incorrectly on the property. See id. § 1, Coverage A.2.j(6).

15

As with the Contractual Liability Exclusion, the Damage to Property Exclusion contains another broad exception to the policy exclusion: Frankenmuth is obligated to cover property damage that occurred because Hodsco or its contractors or subcontractors performed their work on the property incorrectly, provided that the damage falls within the "Products/completed operations hazard." See id. § 1, Coverage A.2.j. The Agreement defines "Products/completed operations hazard" as including "all 'bodily injury' and 'property damage' occurring away from premises [Hodsco] own[s] or rent[s] and arising out of [Hodsco's] work." Id. § V.16.a. The only work exempted from this definition is work that Hodsco has not yet completed; even "[w]ork that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." See id. Parsing this Exclusion, the Exception to the Exclusion, and the Definition together, the Court interprets these terms of the Agreement to require Frankenmuth to cover damage to completed property that became damaged at some point after Hodsco finished its work on the property, and was damaged as a result of Hodsco or its contractors or subcontractors failing to do their work correctly.

Frankenmuth argues that the Damage to Property Exclusion relieves it of its duty to defend Hodsco because the property damage occurred on property upon which Hodsco was working. But this argument does not apply the exception, which requires Frankenmuth to cover property damage to completed work caused by Hodsco's work performance. Here, the complaint in the State Court Litigation alleges that the defects that Hodsco caused started to cause damage to the property some time <u>after</u> Hodsco finished its work. Construing the allegations in the complaint in a light most favorable to Hodsco, the Court finds that these allegations would constitute property damage to a completed operation, and that the property damage was caused by Hodsco's allegedly improper work. Accordingly, the property damage at issue falls within the

16

"products/completed operations hazard" exception to the Damage to Property Exclusion. Thus, this Exclusion does not remove Frankenmuth's duty to defend Hodsco.

    *3. Whether the Association has standing to pursue damages in connection with personal property owned by Tower Crossing's homeowners.*

Frankenmuth's final argument is that the Association does not have standing to pursue claims for damage to personal property owned by Tower Crossing's homeowners. Specifically, it argues that the Association:

> [H]as not collected an assessment for repair to unit owners' interior finishes or personal property. Accordingly, the Association has not paid for repairs to unit owners' interior finishes or personal property, and cannot show that it has been damaged by property losses suffered by individual unit owners or that such demand has been made on the Association."

Frankenmuth's Mot. 12 (citing Third Am. Compl. ¶ 40, State Court Litigation). Defendants respond by claiming that the Illinois Condominium Property Act grants the Association "standing and capacity to act in a representative capacity in relation to matters involving common elements or more than one unit, on behalf of the unit owners, as their interests may appear." See 765 Ill. Comp. Stat. 605-9.1(b).

But the Association is not required to prove standing in the State Court Action; rather— and in contrast to federal law— a plaintiff's lack of standing is an affirmative defense in Illinois. See Glisson v. City of Marion, 720 N.E.2d 1034, 1039 (Ill. 1999). And the question currently before the Court asks only whether Frankenmuth has a duty to defend Hodsco. There is no issue regarding the extent of the damages for which Frankenmuth will ultimately bear the duty to indemnify under the Agreement. Instead, "[t]he only appropriate action for an insurer in such a circumstance is to defend its insured and then raise that affirmative defense on behalf of its insured." See Westfield Ins. Co. v. W. Van Buren, LLC, 2016 IL App (1st) 140862-U ¶ 41 (May 4, 2016) (citing Ill. Emcasco Ins. Co. v. Waukegan Steel Sales Inc., 996 N.E.2d 247, 255 (Ill.

App. Ct. 2013)) (Pucinski, J., dissenting) (unpublished op.). The Court declines to find or otherwise rule on an issue squarely (and exclusively) before the state court in the underlying action.

### III. CONCLUSION

In conclusion, the Court finds that, as a matter of law, Frankenmuth owes Hodsco a duty to defend in the State Court Litigation. Specifically, the underlying complaint alleges an occurrence of property damage—that is, mold growth and sudden and calamitous water accumulation due to Hodsco's defective construction of various elements of Tower Crossing. Aside from the finding of *prima facie* coverage under the Agreement, the relevant exclusions do not apply. Hodsco would be liable to the Association for damage even without a contract, so the Agreement's Contractual Liability exclusion does not apply. Also, the Damage to Property exclusion is inapplicable because the damage occurred to a completed project; the issue of standing—and the resolution of all other affirmative defenses—remain before the state court. For the foregoing reasons, Frankenmuth's motion is denied, and Defendants' cross motion is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: June 8, 2016